IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JULIE BONE, | : | |
| | : | |
| Claimant, | : | |
| | : | |
| v. | : | CASE NO. 3:12-CV-62-CAR-MSH |
| | : | Social Security Appeal |
| CAROLYN COLVIN, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

_____

**REPORT AND RECOMMENDATION**

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for disability insurance benefits and supplemental security income, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

**LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this

court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted).  The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1]  *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision.  *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam).  The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it.  *Id.*

The claimant bears the initial burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic.  *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).[2]  A claimant seeking Social Security disability benefits must demonstrate that he/she suffers from an impairment that prevents him/her from engaging in any substantial gainful activity for a

---

[1] Credibility determinations are left to the Commissioner and not to the courts.  *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

twelve-month period.  42 U.S.C. § 423(d)(1).  In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act.  20 C.F.R. § 404.1 *et seq.*

Under the Regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner determines whether the claimant is working.  *Id.*  If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  *Id.*  Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments.  *Id.*  Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the AListing@).  *Id.*  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  *Id.*  Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Id.*  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

**Administrative Proceedings**

Claimant protectively applied for disability insurance benefits and supplemental security income on August 7, 2008, alleging disability as of July 1, 2004, due to neurofibromatosis I, scoliosis, asthma, and allergies. (Tr. 126; ECF No. 9.) Claimant's application was denied, and Claimant timely requested a hearing before an Administrative Law Judge ("ALJ"). The Claimant appeared before an ALJ for a hearing on October 12, 2010, and following the hearing, the ALJ issued an unfavorable decision on November 3, 2010. (Tr. 15-23.) The Appeals Council ultimately denied Claimant's Request for Review on March 14, 2012. (Tr. 1-7.) This appeal followed.

**Statement of Facts and Evidence**

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. (Tr. 17.) The ALJ found that Claimant had neurofibromatosis, scoliosis, asthma, allergic rhinitis, and ptosis of the eyelids, which were determined to be severe. (*Id.*) The ALJ then determined that Claimant's severe impairments did not meet or medically equal, either individually or any combination, any one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ next found that Claimant had the residual functional capacity (RFC) to perform light work with the ability to alternate sitting and standing every 30 minutes; only walk/stand and sit for four hours in a day, with normal breaks; only occasional stooping, crouching, crawling, and climbing; and avoid concentrated exposure to dust,

fumes, gases, odors, and poor ventilation, etc. (Tr. 18-19.) Based on his RFC and the medical evidence, the ALJ then determined that Claimant had no past relevant work. (Tr. 22.) The ALJ determined that Claimant was 25 years old at the time she filed her applications, which is considered to be a younger individual. (*Id.*) The ALJ further found that Claimant had a high school education and could communicate in English. (*Id.*) After consulting the Medical-Vocational Rules (GRIDS) and utilizing the testimony of a Vocational Expert ("VE"), the ALJ determined that Claimant was not disabled within the meaning of the Regulations and that there were jobs available which existed in significant numbers that Claimant could perform. (*Id.* at 22.)

## ISSUES

**I.     Whether the ALJ erred in asking an incomplete hypothetical question to the Vocational Expert.**

**II.    Whether the ALJ erred in evaluating Claimant's impairments.**

**III.   Whether the ALJ committed reversible error by contradicting himself.**

**IV.    Whether the ALJ erred in evaluating the opinions of the treating physicians.**

**V.     Whether the Appeals Council erred in denying review of Claimant's case.**

## DISCUSSION

In her first enumeration of error, the Claimant argues that the ALJ erred in asking an incomplete hypothetical question to the Vocational Expert. (Cl.'s Br. 12, ECF No. 10.) Specifically, Claimant contends that the ALJ failed to ask a hypothetical question to the VE which contained any reference to borderline intellectual functioning, speaking and social deficits and fine motor deficits. (*Id.*)

5

As noted above, at step five of the sequential analysis where it is determined that a claimant cannot perform past relevant work, the ALJ, who bears the burden at this step, must decide whether a claimant's RFC allows her to perform other work which exists in the national economy. 20 C.F.R. § 416.920(g). Where applicable, the ALJ may either apply the Medical-Vocational Guidelines ("GRIDS") or obtain the testimony of a VE. *Phillips,* 357 F.3d at 1239-40. In this case, because the Claimant was found to have non-exertional limitations, the ALJ utilized the assistance of a VE. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted). The ALJ is not required to include in the question claims of impairment that he has found to be unsupported. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004).

Claimant first contends that it was error for the ALJ not to include her borderline intellectual functioning in his hypothetical question to the VE. (Cl.'s Br. 12.) It should be noted here that Claimant did not cite any low intellectual functioning in her application for disability benefits. (Tr. 126.) The record reveals that the ALJ discussed Claimant's borderline intellectual functioning, and found it not to be severe after evaluating the four functional areas as dictated in section 12.00C of the Listings for Mental Impairments. (Tr. 17, 18.) Because he did not find that her borderline intellectual functioning caused more than minimal limitations on her ability to perform

basic mental work activities, the ALJ was not required to include this impairment in his hypothetical question to the VE.

As to Claimant's contention that the ALJ failed to include limitations caused by her speech impairment in the hypothetical questions asked of the VE, Claimant is incorrect. The record shows that the ALJ determined that Claimant's neurofibromatosis, which he noted affects speech and motor skills, was severe. (Tr. 17.) In his hypothetical, the ALJ took into account Claimant's speech impairment by including in the question "there's a slight limitation in understanding speech, but one can understand the individual." (Tr. 44.) The VE then listed jobs which included this limitation. (*Id.*) With regard to any social deficits caused by her impairments, the ALJ found that Claimant had only a mild limitation. (Tr. 17.) Specifically, the ALJ noted that Claimant goes shopping, out to eat, and to the movies. (*Id.*) Further, the ALJ noted that Claimant described no difficulty in getting along with friends, family, neighbors or authority figures. (*Id.*) The references by the consultative examiners confirm that Claimant's speech and social skill limitations were no more than mild (tr. 256, 284), and thus, it was not necessary for the ALJ to include them in the hypothetical questions.

Claimant next argues that the ALJ erred by finding that Claimant had no significant motor deficits. (Cl.'s Br. 14.) Claimant contends that each of the jobs that the ALJ found she could perform required the ability to handle and finger frequently. (*Id.*)

In his findings, the ALJ evaluated Claimant's complaints of motor skill deficits and specifically cited to medical evidence in the record to support his assessment that

7

there were no significant motor skill deficits which would impact her ability to perform work. (Tr. 19.) The ALJ specifically mentioned the reports of Dr. Lava, a neurologist, who examined Claimant and found that she had normal grip strength, good coordination and normal motor strength in her right and left hands. (Tr. 19, 508-09.) The ALJ also noted Dr. Blaloch's report that Claimant had 5/5 motor strength in both her upper and lower extremities and that her fine and gross manipulations were "normal." (Tr. 19, 283.)

In this case, however, it is clear that Claimant has had deficits in the area of fine motor skills since childhood. As noted by the Claimant, the jobs that were found to be available in significant numbers in the national economy which Claimant could perform required frequent or at least occasional handling and fingering. The medical opinions cited by the ALJ which found that Claimant's motor strength was normal also noted that she had difficulty writing and problems with fine motor skills. (Tr. 19.) Having found that her neurofibromatosis was severe, the ALJ should have included the limitations which resulted therefrom regarding her motor skill deficits in his RFC and hypothetical question to the VE. As such, this case should be remanded so that the ALJ may do just that.

### III.   Other Issues

Having found that the Commissioner erred as to the issue analyzed above, the Court finds no need to address the remaining claims. However, on remand, the ALJ is directed to address each of the remaining claims raised by Claimant.

### CONCLUSION

WHEREFORE, for the foregoing reasons, it is RECOMMENDED that the Commissioner's decision in this case be remanded pursuant to sentence four. Under 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this, the 28th day of August, 2013.

S/ STEPHEN HYLES
UNTED STATES MAGISTRATE JUDGE